PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO.

(District Court, S. D. New York. November 12, 1912.)

In Equity. Suit by the Pennsylvania Steel Company and another against the New York City Railway Company. On motion by counsel for the committee of contract creditors to instruct a receiver to pay liquidated demands, with a view of expediting as far as possible the final distribution of the fund in the receiver's hands.

Morgan J. O'Brien, Charles E. Rushmore, and George N. Hamlin, all of New York City, for petitioner.

James Byrne, of New York City, for complainant.

Matthew C. Fleming, of New York City, for receiver of New York City Ry.

Arthur H. Masten and William M. Chadbourne, both of New York City, for receiver of Metropolitan St. Ry.

Richard Reid Rogers, of New York City, for New York Railways Co.

Brainard Tolles, of New York City, for Second Ave. R. R. interests.

Brainard Tolles, of New York City, for Guaranty Trust Co.

Bronson Winthrop and Charles T. Payne, both of New York City, for Farmers' Loan & Trust Co.

Benjamin S. Catchings, of New York City, for tort creditors' committee.

LACOMBE, Circuit Judge. This suit is a creditors' bill, in which the two important steps are the marshaling of the assets and their distribution among the creditors. The first of these operations has progressed very far. The principal asset, the two choses in action, has been realized and is now represented by a large sum of money; other assets have been sold and converted into cash. There are certain matters of accounting yet undisposed of. The exact amount of money and property, belonging to the City Railway Company when

receivers were appointed, which was used in the operation of the road, and which, under the decisions of the Court of Appeals must be returned to its estate, has not yet been determined. The exact amount of payments made by the City Railway Company, in conformity to the requirements of clause XV of the lease, is yet to be determined. But aside from these items, and possibly some others, it is known that there is in the estate of the company in receiver's hands available to pay creditors a sum so large that it is now in order to see if the same, or some part thereof, cannot now be disbursed. If some such disbursement could be made, without waiting for the final steps in the accountings above referred to, and for the liquidation of all claims as yet unliquidated, it would be desirable to do so, because it is now upward of five years since receivers were appointed, and no creditor has yet received anything.

In order to see what action may now be taken toward such end, we must first ascertain what is the amount of cash assets. The City Railway's share of the money recovered in settlement of the two suits is in round numbers $2,490,000. From this is to be deducted its share of the expenses of those two litigations. The interest which has accumulated on this fund since it came into receiver's hands will probably so nearly pay all the expenses of those litigations that we may disregard any deductions on that account. The expenses of this particular receivership since August 1, 1908, and until final distribution, are also to be deducted. What those are to date the papers do not show. The future expenses, including all allowances, cannot, of course, be exactly estimated; but as payments on account have been made year by year to receiver and his counsel (which are included in the payments to date), it is evident that a very large part of this $2,490,000 will remain available to pay creditors. Moreover, at the time the stock of the Bridge Operating Company was sold for $150,-000, the receivers of the Metropolitan were short of cash, and $100,-000 of those proceeds were loaned to them on call. This sum is available as cash whenever called for, and will go towards meeting the expenses of receivership.

The share of this fund acquired by prosecution of these two choses in action, and which is apportioned to the Metropolitan Company, is $3,010,000 out of the $5,500,000, and upwards of $1,000,000 collected on account of the judgment in the action at law before settlement of the two litigations. In round numbers, the receiver of the City Company now holds $4,010,000, which belongs to the Metropolitan, but from which he is, as the Court of Appeals has held, entitled to make certain deductions, which deductions become, of course, items of cash added to the estate of the City Company in receiver's hands. The first of these items is $234,483.01, expressly named in the opinion of the Court of Appeals. The next item is the amount of money actually paid by the City Company subsequent to May, 1907, and until the appointment of receivers, for purposes of the sort enumerated in article XV. Just how much this is can be shown only by proof before the master; but it should not take long to make such proof.

The total amount is so large that it would seem the various City Company interests would find it wiser to prove only the items which are practically undisputed, rather than waste time and money squabbling over items which are on the border line. I have little doubt that, if the receivers and their counsel should take this matter up with the auditors, they could determine what is the fair and reasonable amount of this item within a week or two. The court is informed by the receiver unofficially that such reports as he has had from the auditor's department would seem to indicate that, throwing out every doubtful item, the total of this deduction will amount to a very considerable sum, several hundred thousand dollars. The next deduction allowed by the Court of Appeals is for expenditure, *after* appointment of receivers, for purposes within article XV, and which expenditures were made out of assets of the City Company. The next deduction is for other expenditures made by receivers for operation of the system out of assets of the City Company. An accounting is necessary to show the amounts of these two last-named deductions; but since the cash and supplies of the City Company taken hold of by receivers on September 24, 1907, was concededly over $1,000,000, and it was practically all used up by August 1, 1908, these two deductions must make a very material addition to the cash assets of the City receiver. There is a further deduction to be made, under the opinion of the Court of Appeals, for "obligations incurred" by the City Company prior to receivership for the purposes of article XV. It should not take long to state this amount. "Obligations incurred," but not paid, are debts of the City Company, the basis of claims against that company which have long since been liquidated. It will be for the master, in the first instance, to determine which of these claims are for purposes of article XV.

It is not practicable now to make any exact estimate as to these various deductions which the receiver is to make from the fund in his hands belonging to the estate of the Metropolitan, and is to transfer to the fund belonging to the estate of the City Company. Suffice it to say that there seems no doubt that he has, available to pay creditors of the City Company, more than $4,000,000 cash.

Let us now see what are the claims of creditors of this company. The opinions of the Court of Appeals have disposed of the receiver's certificates. If the estate of the City Company paid any of them, it would be reimbursed therefor by the estate of the Metropolitan, which for such purposes is abundantly solvent under the $10,000,000 plus $2,000,000 clauses of the decrees of foreclosure and sale and the obligations assumed by the purchaser thereunder. The receiver's certificates are not to be counted among the obligations of the City Company.

The so-called contract claims have been liquidated at $1,336,172.55. Practically all of this is for supplies and material, and for work, labor, and services in connection either with construction, maintenance, repair, or operation of the system.

The so-called tort claims for damages for personal injuries have been liquidated at $2,047,263.18. Other tort claims, penalties for fail-

ure to give transfers, have been liquidated at $33,120. All the claims of the city of New York have been liquidated at $363,060.30. The claim of the stockholders of the Metropolitan, represented by the Waterbury committee, have been liquidated at $25,322.50. Stated in round numbers these items aggregate as follows:

$1,336,000
2,047,000
363,000
33,000
25,000
_____
$3,804,000

Other claims which have not yet been finally liquidated are as follows:

Fulton Street Company .............................................. $25,000
Central Crosstown Company ......................................... 60,000

These sums are liquidations by the District Court. The amounts are subject to revision on appeal.

Receiver and trustee, Second Ave. Railroad ................. $ 2,553,917 65
Second Avenue bondholders ............................... 500,000 00
Metropolitan Express Company ............................ 130,000 00
Central Park North & East Railroad ...................... 2,800,000 00
National Conduit & Cable Company ........................ 44,000 00
Metropolitan receivers .................................. 44,000,000 00
Farmers' Loan & Trust Company ........................... 44,000,690 00

The last two claims are practically duplications. It is stated that the two items of waste and failure to pay franchise taxes, which are included in them, will exceed $6,500,000.

Mere inspection of these figures indicates most clearly that, if all claimants—whether their claims be liquidated or unliquidated—are to be considered as general creditors and are to be paid ratably out of the assets, there is not and will not be sufficient to pay them in full, and it would be a most hazardous undertaking to determine the amount of any dividend to be paid in advance of complete liquidation. It does not, however, necessarily follow that all further proceedings must stop until the last item is liquidated. From the beginning of the proceedings it has been insisted on behalf of certain claimants that they were entitled to a preference in payment over other general creditors. We need not now look into the nature of these contentions—whether they are based upon some analogy to the cases found in the books where persons furnishing supplies and labor of a certain type have been held entitled to displace the lien of a mortgage, or whether, upon some theory of a trust, a lien may be asserted by such claimants upon some particular fund marshaled by the receiver, or whether some other circumstance connected with the past history of these roads gives some type of claimant a superior equity is immaterial. The only question now is, whether such a stage has been reached that any and all claimants asserting such lien or equity should be forthwith given an opportunity to satisfy the court that their contentions are sound. In my opinion, such an opportunity should be given, since the receiver has actual cash in hand sufficient to pay all who are at all likely to

undertake to establish a preference in payment.  If it be found by the master, by this court, and by the Court of Appeals that any claimant is entitled to be thus paid, payment of his claim can probably be made in full.

The determination of all these questions as to priority of payment can be quickly made.  Less than a half dozen claims will present every possible type.  The master can take what testimony may be necessary, and after argument may report thereon.  This court can dispose of his report promptly, and it seems entirely practical to submit the questions to the Court of Appeals at its January session.

If any one having a typical claim of this sort will apply to the court ex parte to have the same sent to the special master for determination as to its status, an order to that effect will be made.  Should it be determined that any typical claim is entitled to preference in payment, a general order will be made requiring all persons who contend that their claims are of a similar character to present such claims for preference within a specified time.